JANET M. HEROLD, Regional Solicitor
DANIELLE L. JABERG, Cal Bar No. 256653
Counsel for ERISA
ANDREW J. SCHULTZ, Cal Bar No. 237231
NIAMH E. DOHERTY, Cal Bar No. 260749
Trial Attorneys
Office of the Solicitor
United States Department of Labor
90 7th Street, Suite 3-700
San Francisco, CA 94103
Telephone: (415) 625-7745
Facsimile: (415) 625-7745
schultz.andrew@dol.gov

Attorneys for THOMAS E. PEREZ, Secretary of Labor,
United States Department of Labor

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ,<br>     Secretary of Labor,<br>     United States Department of Labor,<br><br>              Plaintiff,<br>   vs.<br><br>GRUBER SYSTEMS, INC., a California<br>corporation; GRUBER SYSTEMS, INC.<br>EMPLOYEE STOCK OWNERSHIP<br>PLAN, an employee benefit plan; and<br>JOHN HOSKINSON, an individual,<br><br>              Defendants. | Case No.: 2:15-cv-4050<br><br>COMPLAINT FOR<br>ERISA VIOLATIONS<br>(29 U.S.C. §§ 1001-1191(c) |

Plaintiff THOMAS E. PEREZ, Secretary of Labor, United States Department of
Labor ("Secretary") pursuant to his authority under §§ 502(a)(2) and (5) of the

Complaint

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (5), alleges:

## JURISDICTION AND VENUE

1.      This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c, and is brought by the Secretary under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to enjoin acts and practices that violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duties under ERISA, and to obtain such further equitable relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

2.      This Court has subject matter jurisdiction over this action pursuant to ERISA  § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3.      Venue of this action lies in the United States District Court for the Central District of California, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Gruber Systems, Inc. Employee Stock Ownership Plan (the "Plan" or "ESOP") is administered in Valencia, California, within this district, the fiduciary breaches at issue took place within this district, and Defendant John Hoskinson resides within this district.

## PARTIES

4.      Plaintiff, the Secretary of Labor, is vested with authority to enforce the provisions of Title I of ERISA by, among other things, filing and prosecuting claims against fiduciaries and other parties who commit violations of ERISA.  ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5).

5.      Defendant Gruber Systems, Inc. ("Gruber" or "Company") is a closely-held California corporation with a principal place of business in Valencia, California.  At all

relevant times, Gruber has made equipment used to manufacture bath tub and counter molds used in residential housing construction.  At all relevant times, Gruber was and is the sponsor of the ESOP, a fiduciary of the Plan within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest to the Plan within the meaning of ERISA § 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

6.      Defendant ESOP is an employee benefit plan within the meaning of ERISA 3(3), 29 U.S.C. § 1002(3), and is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).  The ESOP was established by Gruber in 1977.  The ESOP is named as a defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, solely to ensure that complete relief be granted.

7.      Defendant John Hoskinson ("Hoskinson"), Chairman and CEO of Gruber, was and is a named Trustee and fiduciary of the Plan, within the meaning of ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest to the Plan within the meaning of ERISA § 3(14)(A), (E) and (H), 29 U.S.C. § 1002(14)(A), (E) and (H).

## **INTRODUCTION**

8.      The ERISA violations arise from Gruber's and Hoskinson's failure to protect the ESOP's interests in connection with its purchases of Gruber stock.  Gruber and Hoskinson caused or permitted the ESOP to buy Gruber stock for more than its fair market value.  In so doing, Gruber and Hoskinson benefitted the Company at the expense of the ESOP and Plan participants.  Further, Gruber and Hoskinson violated ERISA's anti-cutback provisions, prohibited transactions provisions, and their duties of prudence, loyalty, and adherence to plan documents.

## GENERAL ALLEGATIONS

9.      Paragraphs 1 through 8 above are realleged and incorporated by reference herein.

10.     The ESOP was established on December 29, 1977, by the Company, the Plan sponsor, to provide retirement benefits to eligible employees.  The ESOP is funded exclusively through employer contributions, and covers employees who have completed at least 1,000 hours of service.  As of December 31, 2009, the ESOP reported 194 participants and $3,965,575 in assets.  As of December 31, 2012, the ESOP reported 189 participants and $601,705 in assets, consisting almost entirely of Gruber stock.

11.     The Plan's governing documents named the Company as the sponsoring employer and Hoskinson as the Plan Trustee and Plan Administrator, as t sole member of the Administrative Committee.  Hoskinson became CEO and Trustee of the ESOP in early 2006.

12.     The Plan's governing documents provide, in pertinent part, that the Committee may direct the Plan Trustee to sell shares of Gruber stock to any person, including the Company or any employer, at a price which, in the judgment of the Committee, is not less than the fair market value of such Company Stock, as of the date of the sale.  The Plan documents further provide that purchases of Company Stock by the Trust will be made at a price which, in the judgment of the Committee, does not exceed the fair market value of such Company Stock.

13.     Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person acquires fiduciary status if he (i) exercises discretionary authority or control over the management of a plan or exercises any authority or control over plan assets … or (iii) has discretionary authority or responsibility in the administration of a plan.

14.     At all relevant times, Hoskinson was a fiduciary of the ESOP pursuant to ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii).  As a fiduciary,

Complaint

Hoskinson is also a party in interest to the ESOP pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

15.     Section 6(c) of the 2009 Plan document sets forth conditions required for purchases of Company Stock by the Trust after December 31, 1986, including that a determination of fair market value of Company Stock for all purposes under the Plan be made by an independent appraiser who meets the requirements established under Sections 401(a)(28)(C) and 170(a)(1) of the Internal Revenue Code of 1986, as amended.

16.     The ESOP engaged in two transactions to purchase shares of Company stock, which are the subject of this action.  The first transaction took place on April 22, 2008, when Hoskinson caused the ESOP to purchase 55,416 shares of Gruber stock for approximately $1.1 million ("2008 Transaction").  The second transaction took place on November 18, 2009, when Hoskinson caused the ESOP to pay $1.5 million for 313,812 shares of Gruber stock ("2009 Transaction").

## ERISA VIOLATIONS

### Failure to Set Up Segraged Post Termination Accounts for All Eligible Participants

17.     As of January 1, 2006, the Plan Document provided that a Plan participant who terminated their participation in the Plan would have their ESOP account balance converted to investments other than Gruber stock and placed in a Segregated Post Termination Account ("SPTA").  The purpose of the SPTA was to allow eligible participants, such as retired employees, to cash out of their company stock.

18.     Former Gruber CEO Louis Garasi used the SPTA provision to cash out $1.6 million in Gruber stock in his ESOP account in December 2006.  Further, from January 1, 2006, to December 31, 2007, nineteen Plan participants received SPTAs with a total cash value of over $3.96 million.  However, 47 Plan participants who retired or

separated from Gruber during this same time period did not have SPTAs set up to cash them out of their Gruber stock.

19.     The Plan Document required the ESOP to set up the SPTA as soon as feasible and to value the SPTA as of December 31st of the Plan year preceding the participant's retirement or separation.

20.     On January 23, 2008, Hoskinson and Gruber amended the Plan, via Plan Amendment #8, to rescind the SPTA option for retiring or terminating participants effective January 1, 2008.  Hoskinson and Gruber then used Plan Amendment #8 to deny some Plan participants SPTAs even though the participants retired during 2007 and should have had an SPTA set up, with assets other than employer stock, based on the account value as of December 31, 2006.

## The ESOP's April 22, 2008 Stock Purchase Transaction

21.     Hoskinson, as Trustee for the ESOP, retained Cogent Valuation ("Appraiser"), a valuation services firm, to provide a valuation of the Common Stock of Gruber on or about April 22, 2008.  The Appraiser had previously been retained to perform Common Stock valuations of Gruber at various times in 2006 and 2007.

22.     The Appraiser explained in its April 22, 2008 valuation report that in performing its valuation, it relied upon incomplete and unconsolidated financial data provided by Hoskinson.  This data included management representations regarding conclusions expressed in a real estate appraisal of a real property with recent improvements provided by Gruber, and the fair market value of Gruber's investment in International Cast Polymer Holdings ("ICPH"), in which it owned a 95% interest.  ICPH was created to expand Gruber's business interests in China; however, the Chinese operations were unprofitable and a cash-drain.  Cogent also advised in its report that it

assumed, without independent verification, the accuracy and completeness of all information supplied to Cogent.

23.     Cogent further advised that based on Gruber's long history of profitable operations, that an investor would evaluate it on a going concern basis, rather than on the basis of individual asset values, except for certain nonoperating assets and liabilities treated separately in Cogent's analysis.  Cogent analyzed Gruber as a going concern based primarily on the earning and cash flow generating capabilities of the Company, using market and income approaches, yet it ignored Gruber's operating losses in China and adopted, without independent verification, questionable estimates of asset values.

**The ESOP's November 18, 2009 Stock Purchase Transaction**

24.     Hoskinson, as Trustee for the ESOP, again retained the Appraiser on or about September 14, 2009, to perform a Common Stock valuation of Gruber.

25.     In performing its valuation, the Appraiser again relied upon information provided by Gruber, stating in one of its September 2009 valuation reports that it "assumed, without independent verification, the accuracy and completeness of all information supplied."  Cogent relied upon Gruber management estimates of the fair market value of Gruber assets as of December 31, 2008 and stated that its valuation approach changed, resulting in the inclusion of ICPH in its consolidated historical and projected future financial results (resulting in lower historical earnings) and the elimination of Gruber's investment in, and receivables from, ICPH being treated as nonoperating assets of Gruber.  Cogent relied on a single, questionable methodology, the net asset methodology, in performing its 2009 valuations.  The projected earnings used in these valuations were unreasonable.  The September 15, 2009 valuation report noted that Gruber revenues declined dramatically in 2007 and further in 2008 due to slowing in home construction and remodeling.  The valuation report additionally noted that Gruber

generated net losses of $5,479,000 and $2,954,000, respectively, in 2007 and 2008; whereas, it had net income of $217,000 and $1,760,000, respectively, in 2006 and 2005.

26.    The Appraiser relied upon Gruber-prepared forecasts for 2009 through 2013.  The Appraiser also relied upon Hoskinson's unreasonable projections that Gruber was a going concern with highly optimistic future growth, while ignoring Gruber's liabilities and operating losses, including Gruber's China division, which had been operating at a loss for several years.

28.    As a result of the Appraiser's Report's flaws, assumptions and inaccuracies, the values set for Gruber shares of stock during the 2008 Transaction and the 2009 Transaction were far higher than the stocks' actual fair market values.  Therefore, the ESOP paid more than adequate consideration for Gruber's stock.

29.    Defendants Gruber and Hoskinson, acting in their fiduciary capacities, failed to follow Plan documents, improperly cut back benefits of Plan participants, invested Plan assets imprudently, and caused the Plan to engage in prohibited transactions by purchasing Gruber stock at inflated values, in violation of ERISA §§ 204(g), 403(c)(1), 404(a)(1)(A),(B) and (D), 406(a)(1)(A) and (D) and 406(b)(1) and (2), 29 U.S.C. §§ 1054(g), 1103(c)(1), 1104(a)(1)(A) and (B), 1106(a)(1)(A) and (D), and 1106(b)(1) and (2) as follows:

      a.    Between January 1, 2006 and January 23, 2008, Defendants Gruber and Hoskinson failed to ensure that required Segregated Post Termination Accounts were set up for all eligible Plan participants in order to allow the participants to cash out of their Gruber stock in violation of ERISA Section 404(a)(1)(D), 29 U.S.C. 1104(a)(1)(D); and

      b.    On or after January 23, 2008, improperly cut back and reduced benefits for Plan participants by changing the Plan's terms to remove

the Segregated Post Termination Account option and then refusing to set up accounts that already should have been created prior to the Plan Amendment in violation of ERISA § 204(g), 29 U.S.C. 1054(g); and

c.    On April 22, 2008, Defendants Hoskinson and Gruber caused the Plan to pay more than fair market value for Gruber stock by transfering $1.1 million in cash from the Plan to the Company in exchange for Gruber stock, despite its declining stock value and in reliance on appraisals based on faulty assumptions and unconsolidated information, as described above, in violation of ERISA §§ 403(c)(1), 404(a)(1)(A), (B) and (D), 406(a)(1)(A) and (D), 406(b)(1) and (2), 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(A), (B) and (D), 1106(a)(1)(A) and (D), 1106(b)(1) and (2).

d.    On November 18, 2009, Defendants Hoskinson and Gruber caused the Plan to pay more than fair market value for Gruber stock by transfering $1.5 million in cash from the Plan to the Company in exchange for Gruber stock, despite its declining stock value and in reliance on appraisals based on faulty assumptions and unconsolidated information, as described above, in violation of ERISA §§ 403(c)(1), 404(a)(1)(A), (B) and (D), 406(a)(1)(A) and (D), 406(b)(1) and (2), 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(A), (B) and (D), 1106(a)(1)(A) and (D), 1106(b)(1) and (2).

e.    Defendants Hoskinson and Gruber permitted Plan assets to inure to the benefit of the Company, in violation of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1);

f.   Defendants Hoskinson and Gruber failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to the participants and their beneficiaries, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

g.   Defendants Hoskinson and Gruber failed to act with the care, skill prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

h.   Defendants Hoskinson and Gruber failed to act in accordance with the documents and instruments governing the Plan insofar as such are consistent with the provisions of ERISA, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);

i.   Defendants Hoskinson and Gruber caused the Plan to engage in transactions that they knew or should have known constituted a direct or indirect transfer sale of Plan assets between the Plan and a party in interest, in violation of ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A);

j.   Defendants Hoskinson and Gruber caused the Plan to engage in transactions that they knew or should have known constituted a direct or indirect transfer of Plan assets to, or use by or for the benefit of a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

Complaint

k.     Defendants Hoskinson and Gruber dealt with assets of the Plan in their own interest or for their own account, and acted on behalf of a party whose interests were adverse to the interests of the Plan or the interests of the Plan participants and beneficiaries, in violation of ERISA § 406(b)(1) and (2), 29 U.S.C. § 1106(b)(1) and (2);

30.     As a direct and proximate result of the breaches of fiduciary duties committed by Defendants Company and Hoskinson, as described in Paragraph 29 above, the Plan has suffered losses, including lost-opportunity income, for which Defendants are jointly and severally liable, pursuant to ERISA § 409, 29 U.S.C. § 1109.

31.     Defendant Hoskinson is liable as a co-fiduciary pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a), for the violations alleged in paragraph 29 above because he knowingly committed such breaches and duties by failing to comply with ERISA §§ 204(g), 403(c)(1), 404(a)(1)(A), (B) and (D), 406(a)(1)(A) and (D), and 406(b)(1) and (2), 29 U.S.C. §§ 1054(g), 1103(c)(1), 1104(a)(1)(A), (B) and (D), 1106(a)(1)(A) and (D), and 1106(b)(1) and (2) as described above and he failed to make reasonable efforts to remedy such breaches.

32.     Defendant Company is liable as a co-fiduciary pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a), for the violations alleged in paragraph 29 above because it knew of (Company CEO and Plan Trustee) Defendant Hoskinson's breach of his fiduciary duties as described above and it failed to make reasonable efforts to remedy such breaches.

## PRAYER FOR RELIEF

WHEREFORE, the Secretary prays for judgment:

A.     Ordering Defendants Company and Hoskinson to restore to the Plan any losses, including lost opportunity costs, to any participant who should have had a Segregated Post Termination Account set up on their behalf but did not receive one;

B.     Ordering Defendants Company and Hoskinson to reverse the 2008 and

2009 prohibited transactions, and restore to the Plan any losses, including lost opportunity costs, resulting from fiduciary breaches committed by them or for which they are liable;

C.     Permanently enjoining Defendants Company and Hoskinson from violating the provisions of Title I of ERISA;

D.     Permanently enjoining Defendant Hoskinson from serving as a fiduciary of, or service provider to, any ERISA-covered employee benefit plan and removing him from any positions he now holds as a fiduciary of the Plan;

E.     Appointing an independent fiduciary to distribute the Plan's assets to the participants and beneficiaries, terminate the Plan, and conclude any Plan-related matters connected with the proper termination of the Plan;

F.     Requiring Defendants Hoskinson and Company to pay for all costs and fees associated with the appointment and retention of the independent fiduciary;

G.     Requiring the Defendants to cooperate with the independent fiduciary.

H.     Awarding the Secretary the costs of this action; and

Complaint

I. Ordering such further relief as is appropriate and just.

Dated: May 29, 2015

M. PATRICIA SMITH
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

DANIELLE L. JABERG
Counsel for ERISA

*/s/ Andrew J. Schultz*
ANDREW J. SCHULTZ
NIAMH E. DOHERTY
Trial Attorneys

Attorneys for Plaintiff
U.S. Department of Labor

Complaint